DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Randy D. Mackey, appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. We affirm in part and reverse in part.
 I.
Randy and Caroline Mackey were married in Huntingdon, England on January 30, 1989. Mr. Mackey was in the United States Air Force and was stationed in England. Ms. Mackey was employed as a secretary at a Ford dealership in Cambridge, England and had received training as a secretary in England. Two children were born to the Mackeys during the marriage: Steven and Chelsea. As the Mackeys wanted their children to live in one location rather than move repeatedly, as many military families must do, Mr. Mackey left the Air Force after over fourteen years of service when he was offered a buy-out plan, termed a Voluntary Separation Incentive ("VSI"). The Mackeys moved to Akron, Ohio where Mr. Mackey received training as a journeyman bricklayer, which is the profession that he currently pursues. Ms. Mackey gained employment in the United States and has been the primary caregiver for the Mackeys' children. She worked in a fast-food establishment and a gas station near their home. She did not obtain an Ohio driver's license, and hence, was unable to gain work in the field in which she was trained, as secretarial work would require her to travel further to and from work.
After the birth of Steven and Chelsea, Mr. Mackey had a vasectomy. Three children were born to Ms. Mackey during the marriage and after Mr. Mackey had had a vasectomy. DNA testing determined that Mr. Mackey was not the biological father of any of these three children.
On September 8, 1997, Mr. Mackey filed a complaint for divorce from Ms. Mackey after over eight years of marriage. On February 9, 1999, the trial court granted the parties a divorce. In the divorce decree, the trial court effected a division of the marital property and allocated parental rights and responsibilities; however, the issue of past support was left unresolved. On February 28, 2000, the trial court entered an order resolving the issue of past support. This appeal followed.
 II.
Mr. Mackey asserts five assignments of error. We will address each in due course, consolidating his second and third assignments of error to facilitate review.
 CHILD SUPPORT AND CUSTODY A. First Assignment of Error THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ESTABLISHING THE APPELLEE AS THE RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILDREN.
Mr. Mackey avers that the trial court abused its discretion in its allocation of parental rights and responsibilities. He asserts that the children would receive more benefit from his child support payments if he were the residential parent, as Mrs. Mackey has three additional children to support. Moreover, he asserts that the children will not receive the full benefit of the child support payments that he has been ordered to pay Mrs. Mackey because she will use those payments to support her three additional children as well. We disagree.
A trial court has broad discretion in the allocation of parental rights and responsibilities. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Further, appellate courts must afford "the utmost respect" to the trial court's exercise of discretion because "the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
The best interest of the child should be the overriding concern in the allocation child custody. Miller, 37 Ohio St.3d at 75. Further, "[i]n any determination of this nature, the trial court must consider all relevant factors, including but not limited to those enumerated in" R.C. 3109.04(F).Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 22 (referencing the former R.C. 3109.04(C) which is analogous to the current R.C. 3109.04(F)). R.C.3109.04(F) provides, in pertinent part:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
In the instant case, evidence adduced at the hearing centered on Mr. and Ms. Mackey's misconduct during and after the marriage. Mr. Mackey testified concerning his wife's infidelity and concerning a loan that he asserted she had obtained without his signature, although a signature appearing to be his appeared on the document. Ms. Mackey testified concerning an incident in which she asserted that Mr. Mackey threw coffee on her and hit her. Mr. Mackey admitted to kicking their dog and having an altercation with Ms. Mackey, but denied that he struck her. He testified that he only pushed her away in self-defense. However, he pleaded no contest when he was charged criminally in connection with the incident.
The trial court concluded Mr. Mackey had committed an act of domestic violence against Ms. Mackey. Although the record does not reflect whether he was convicted of domestic violence, pursuant to R.C. 2919.25, there was evidence presented that he was "convicted of * * * [an] offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense[.]" R.C. 3109.04(F)(1)(h).
Further, the evidence showed that Ms. Mackey was the primary caregiver of the children. Mr. Mackey asserts that his child support payments may be used, in part, to provide for the three children who are not his biological children. However, that speculation does not evidence an abuse of discretion on the part of the trial court in allocating sole parental rights and responsibilities to Ms. Mackey.
Accordingly, we can discern no abuse of discretion on the part of the trial court in allocating sole parental rights and responsibilities to Ms. Mackey and providing for visitation with Mr. Mackey.
 B. Fifth Assignment of Error THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPUTING UNEMPLOYMENT INCOME TO THE APPELLANT IN CALCULATING CHILD SUPPORT.
Mr. Mackey argues that the trial court erred by imputing unemployment income to him where there was no evidence that he received such income. Essentially, he avers that the trial court's finding was against the manifest weight of the evidence. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
R.C. 3113.215 sets forth the manner in which one's child support obligation is to be calculated and what amounts are to be included in that calculation by the trial court. Specifically, R.C. 3113.215(A)(1)-(2) provides:
(1) "Income" means either of the following:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
 (2) "Gross income" means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, benefits received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration, spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined, and all other sources of income; income of members of any branch of the United States armed services or national guard, including, but not limited to, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source.
The main objective of R.C. 3113.215 is to protect the best interest of the child. Rock v. Cabral (1993), 67 Ohio St.3d 108, 111.
Mr. Mackey was not found to be underemployed by the trial court. Instead, the trial court used the figure provided by Mr. Mackey in his "AFFIDAVIT OF INCOME, EXPENSES, HEALTH INSURANCE, PARENTAL RIGHTS, AND UCCJA[.]" The trial court did not impute income to Mr. Mackey that he did not earn, but rather, included unemployment income it found he must have received in his gross income amount, as is required by R.C. 3113.215(A)(2).
Mr. Mackey first asserts that the amount listed as his base yearly wage must have erroneously included his Air Force pension. Therefore, he avers that the trial court erred in using that base yearly wage figure to determine that he had received unemployment income. However, under the heading "OTHER," Mr. Mackey's Air Force pension is listed separately from his base yearly wage. On the form, the amount of his Air Force pension was added to his base yearly wage to determine his gross yearly income, indicating that his Air Force pension was not included in his base yearly wage.
In terms of his unemployment income, Mr. Mackey testified that his work was full-time "[w]eather permitting[.]" Further, Mr. Mackey listed his gross monthly pay to be $2,728, making his yearly pay $32,736. However, his yearly wage is listed as $37,367.89. Hence, there is a discrepancy between these numbers and, given Mr. Mackey's testimony about the nature of his work, we cannot say that the trial court's conclusion, that he received unemployment income which made up the difference between these figures, was against the manifest weight of the evidence. Mr. Mackey's fifth assignment of error is overruled.
 MARITAL PROPERTY DIVISION A. Second Assignment of Error THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE APPELLANT'S ANNUAL PAYMENTS FROM THE MILITARY ARE MARITAL PROPERTY.
 Third Assignment of Error THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN VALUING THE APPELLANT'S ANNUAL PAYMENTS FROM THE MILITARY AND ORDERING THAT THE APPELLANT PAY THE APPELLEE A PORTION OF SUCH WHICH EXCEEDS THE RATE AT WHICH APPELLANT RECEIVES THE PAYMENTS.
Mr. Mackey asserts that the trial court erred as a matter of law by including his VSI payments from his Air Force service as marital property. We agree.
Unlike determinations of fact which are given great deference, we review questions of law de novo. Ohio Bell Tel. Co. v. Pub. Util. Comm.
(1992), 64 Ohio St.3d 145, 147.
VSI benefits raise the issue of whether they are acquired after the divorce decree, and hence, are not subject to division as marital property, or are more similar to a pension plan to which contributions were made during the marriage, and hence, are subject to division as marital property. See Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 132. We find the Second Appellate District's analysis of this issue persuasive. In McClure v. McClure (1994), 98 Ohio App.3d 27, 41, the Second Appellate District reasoned that "[l]ike severance payments, VSI benefits attempt to compensate a separated service member for future lost wages." (Emphasis added.) We note that courts in other jurisdictions have held differently. See, e.g., Fisher v. Fisher (S.C.App. 1995),319 S.C. 500, 504 (holding that VSI benefits were subject to division as marital property where the party who served in the military was forced to choose between accepting the VSI payments or being involuntarily discharged due to his misconduct). However, the McClure holding has been followed and cited with approval in Ohio. See, e.g., Grooms v. Grooms
(Apr. 9, 1999), Montgomery App. No. 17439, unreported, 1999 Ohio App. LEXIS 1648, at *3-*4; Pearson v. Pearson (May 20, 1997), Franklin App. No. 96APF08-1100, unreported, 1997 Ohio App. LEXIS 2223, at *22. Hence, we concur with the McClure analysis and conclude that the trial court erred in finding Mr. Mackey's VSI benefits to be marital property.
As we conclude that Mr. Mackey's VSI benefits are not marital property, Mr. Mackey's third assignment of error, which challenges the trial court's valuation of the marital portion of the VSI payments and the trial court's payment schedule, is moot. Accordingly, we decline to address it. App.R. 12(A)(1)(c).
Mr. Mackey's second assignment of error is sustained and his third assignment of error is rendered moot by our decision on his second assignment of error.
 B. Fourth Assignment of Error THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE APPELLEE THE MARITAL RESIDENCE.
Mr. Mackey avers that the trial court erred in awarding Ms. Mackey the marital residence because she will be unable to afford the mortgage payments. We find this assignment of error to be moot and decline to address it.
As we find Mr. Mackey's second assignment of error to be meritorious, we must remand this action to the trial court to recalculate the division of marital property. See R.C. 3105.171(B), (C), and (D). Hence, the allocation of the marital residence to Ms. Mackey may change due to the characterization of Mr. Mackey's VSI payments as separate property. Therefore, the issue is rendered moot and is not ripe for review. Accordingly, we decline to address it. App.R. 12(A)(1)(c).
 III.
Mr. Mackey's first and fifth assignments of error are overruled. His second assignment of error is sustained. Due to our resolution of his second assignment of error, his third and fourth assignments of error are moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause is remanded for a recalculation of the division of marital and separate property and other proceedings not inconsistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
SLABY, J., WHITMORE, J., CONCUR